# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

CAMP ID-RA-HA-JE ASSOCIATION,

        *Plaintiff*,

      v.

LISA ROY, in her official capacity as
Executive Director of the Colorado
Department of Early Childhood; and
CARIN ROSA, in her official capacity
as Director of the Colorado
Department of Early Childhood's
Division of Early Learning Licensing
and Administration,

        *Defendants*.

---

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

### <u>INTRODUCTION</u>

1.    This civil-rights action seeks to prevent the government from forcing a Christian summer camp to surrender its religious character, beliefs, and exercise to maintain a license to operate in Colorado just like everyone else.

2.    Camp Id-Ra-Ha-Je Association ("IdRaHaJe" or "the Camp") is a children's resident camp that operates Christian summer camps in Colorado for children ages 6 to 17.

3.      Colorado requires children's resident camps like IdRaHaJe to obtain and maintain a childcare license to operate in the State.

4.      Founded in 1948, IdRaHaJe believes in the power of camp ministry to win souls to Jesus Christ. It exists so that all who enter its gates would experience God in a new way and would say, "I'd rather have Jesus more than anything!" - the words of the hymn for which IdRaHaJe is named.

5.      While it is a Christ-centered organization, the Camp welcomes children of all faiths and backgrounds to its camps.

6.      Many families choose to send their children to IdRaHaJe camps because of the Christian policies, programs, and education offered at the camps.

7.      As a Christian organization, the Camp's beliefs guide and permeate everything it does, including the operation of its camps, the Christian programs it offers to campers, and its internal policies and practices.

8.      But the Colorado Department of Early Childhood ("the Department") is requiring religious children's camps like IdRaHaJe to forgo their religious character, beliefs, and exercise to operate in Colorado.

9.      The Department does so through regulations that require children's resident camps to allow campers to use restrooms, shower facilities, dressing areas, and sleeping facilities designated for the opposite sex.

10.      Those regulations would require the Camp to violate its religious beliefs by altering its policies and operations that are based on its religious beliefs

about sexuality and gender, including its policies of separating restrooms, shower facilities, dressing areas, and sleeping facilities based on biological sex rather than "gender identity."

11.     The regulations would also force the Camp to allow campers to share a tent or room with members of the opposite sex on IdRaHaJe's off-site camping and backpacking trips.

12.     IdRaHaJe requested an exemption from such regulations for its religious beliefs and exercise. But the Department denied the request.

13.     The Camp is now left with the choice of either (a) retaining its license to operate and violating its beliefs and exercise by treating campers based on their "gender identity" and allowing them to use restroom, shower, dressing, and sleeping facilities designated for the opposite sex, or (b) adhering to its beliefs and exercise and facing revocation or suspension of its license and fines.

14.     Putting the Camp to that choice is unconstitutional.

15.     IdRaHaJe's 2025 summer camps will begin in June and the Camp will maintain its policies that are consistent with its religious beliefs; so the Camp will not be operating its camps in compliance with the new regulations and will face revocation or suspension of its license and fines.

16.     And in June, the Camp must certify its compliance with all resident camp regulations to renew its license.

17.    Likewise, in June or July, a licensing specialist will inspect the Camp's facilities and operations for compliance with regulations.

18.    The Camp will not agree to violate its religious beliefs and exercise and will thus face revocation or suspension of its license and fines in June.

19.    Without a license, the Camp will no longer be able to operate its summer camps in Colorado.

20.    Many children have registered for IdRaHaJe's 2025 camps.

21.    Each year, about 2,500 to 3,000 children attend IdRaHaJe's camps.

22.    When the Camp loses its license to operate, it will have to stop operating its camps, thousands of children will lose the opportunity to attend IdRaHaJe's Christ-centered camps, and the Camp will lose the opportunity to minister to those children.

23.    By conditioning a critical government benefit on IdRaHaJe giving up its religious character, beliefs, and exercise, the Department penalizes IdRaHaJe and the children who attend its camps based on their religion—discrimination that is "odious to our constitution." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 467 (2017).

24.    IdRaHaJe needs declaratory and injunctive relief to remedy this religious discrimination and to allow it to operate in Colorado as a children's camp without sacrificing its religious character, beliefs, or exercise.

## JURISDICTION & VENUE

25.     This civil-rights action raises federal questions under the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

26.     This Court has original jurisdiction over the Camp's federal claims under 28 U.S.C. §§ 1331 and 1343.

27.     This Court can grant the requested declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rules of Civil Procedure 57 and 65.

28.     This Court can award costs and attorneys' fees under 42 U.S.C. § 1988(b).

29.     Venue is proper in this district under 28 U.S.C. § 1391(b).

## PARTIES

30.     Plaintiff Camp Id-Ra-Ha-Je Association ("IdRaHaJe" or "the Camp") is a § 501(c)(3) nonprofit, private Christian organization that operates in Bailey, Colorado. It is organized exclusively for religious, charitable, and educational purposes. IdRaHaJe's Articles of Incorporation at 4, a true and accurate copy is attached as Exhibit 1.

31.     Defendant Dr. Lisa Roy is the Executive Director of the Colorado Department of Early Childhood. Defendant Roy can implement and promulgate rules to execute Title 26.5 of Colorado's Revised Statutes, including the Child Care

Facility Licensing Rules and Regulations, 8 Code of Colorado Regulations ("CCR") 1402-1. She is sued in her official capacity.

32.     Defendant Carin Rosa is the Director of the Department of Early Childhood's Division of Early Learning Licensing and Administration. Defendant Rosa oversees the day-to-day operations of the Division of Early Learning Licensing and Administration. She is sued in her official capacity.

33.     Defendants Roy and Rosa license child care facilities in Colorado and administer Colorado's Child Care Facility Licensing Rules and Regulations, 8 CCR 1402-1, through the Department of Early Childhood's Division of Early Learning Licensing and Administration. The Department and that Division are collectively referred to herein as "the Department" unless the context dictates otherwise.

## STATEMENT OF FACTS

### A.     IdRaHaJe and its religious ministry.

34.     Founded in 1948, IdRaHaJe is a private, nonprofit, Christian organization that operates Christian children's summer camps at its 262-acre property in Bailey, Colorado.

35.     The Camp's mission is to "win[] souls to Jesus Christ through the spreading of the Gospel," "edify[] believers through the preaching and teaching of the Word of God," and "evangeliz[e] campers through witnessing and missions."

36.    Through its summer camps, IdRaHaJe seeks to give children an opportunity to experience God's amazing creation, to be encouraged and renewed through biblical teaching, and to grow in or accept the Christian faith.

37.    IdRaHaJe's summer camps are week-long sessions for children ages 6 to 17.

38.    All programming at the camps is Christ-centered.

39.    The Camp also offers a winter children's camp weekend that is designed to rekindle excitement and passion for Jesus.

40.    The Camp prioritizes the safety of the children participating in its camps. The Camp holds all participants and staff to high standards and reports any inappropriate behavior. All safety equipment is checked regularly.

41.    IdRaHaJe staff are carefully chosen, highly trained, and thoroughly vetted. And all IdRaHaJe staff must agree with the Camp's doctrinal statement.

42.    IdRaHaJe's summer camps include off-site backpacking and camping trips.

43.    While the Camp is a Christ-centered organization, its summer camps are open to all children—families of all faiths and backgrounds are welcome to register.

44.    Parents or guardians wishing to enroll their child(ren) in IdRaHaJe summer camps must register their child(ren) through an online portal and complete certain paperwork.

45.    Parents or guardians do not have to agree with the Camp's religious beliefs to register their child(ren). But to register their child(ren), parents or guardians must agree that their child(ren) will follow all the Camp's policies.

46.    Each summer, IdRaHaJe serves around 2,500 to 3,000 campers.

47.    IdRaHaJe charges various fees for its summer camps. A true and accurate listing of the Camp's 2025 fees is attached as Exhibit 2.

48.    Because the Camp is a Christian ministry, it offers a Campership Fund to provide financial assistance to families who need such assistance to send their child(ren) to camp.

49.    IdRaHaJe is considered a "children's resident camp" under Colorado law. Colo. Revised Statutes § 26.5-5-303(5). It thus must maintain a license to operate. *Id.* § 26.5-5-309(1); *id.* § 26.5-5-320. To maintain a license, it must follow Colorado's "General Rules for Child Care Facilities" in Rule Section 2.100, "Rules Regulating Children's Resident Camps" in Rule Section 2.400, and "Rules Regulating Special Activities" in Rule Section 2.600 (collectively, "resident camp regulations"), which are all part of Colorado's Child Care Facility Licensing Rules and Regulations, 8 CCR 1402-1.

50.    IdRaHaJe has successfully maintained a Colorado resident camp license since 1995.

**B.    IdRaHaJe's religious beliefs guide its operations.**

51.    IdRaHaJe is a Christian organization that bases its culture and operations on its sincerely held religious beliefs rooted in the Holy Bible.

52.    The Camp's doctrinal statement holds that the Camp "believe[s] in the verbal inspiration, inerrancy, and plenary authority of both the Old and New Testaments of the Bible." IdRaHaJe's Doctrinal Statement at 1, a true and accurate copy is attached as Exhibit 3.

53.    The Camp believes every person is created in God's image and deserves love and respect, and it serves children of all faiths and backgrounds.

54.    Many families choose to send their children to IdRaHaJe camps because of their Christian programs and education. And the Camp believes that its programs have "one main purpose, to faithfully share Jesus Christ's love with others."

55.    The Camp also holds sincere religious beliefs about sexuality and gender. It believes and teaches that "God has immutably created each person as either male or female in His image" and that "the differentiation of the sexes, male and female, is part of the divine image in the human race." Exh. 3 (Doctrinal Statement) at 2.

56.    The Camp integrates and follows its Christian beliefs—including those about sexuality and gender—in all its operations.

57.    Consistent with its beliefs, the Camp maintains separate bathrooms, shower areas, changing areas, and sleeping facilities for boys and girls based on their biological differences.

58.    Parents and guardians who register their child(ren) for IdRaHaJe camps are told:

> IdRaHaJe defines gender as biological sex at birth. Any area of camp that is segregated by gender will be segregated by biological sex; this includes bunkrooms/cabins, counselor assignments and bathrooms/showers. Parents should provide a child's biological sex when asked for information on gender during the registration process.[1]

59.    Parents and guardians who register their child(ren) for IdRaHaJe camps must also agree to follow the Camp's "policy regarding sleeping arrangements for campers" and the "[p]arent FAQs for segregate[d] spaces and IdRaHaJe's definition of gender." IdRaHaJe's Summer Policies and Procedures at 2, a true and accurate copy is attached as Exhibit 4.

60.    Children who struggle with gender dysphoria are welcome to attend IdRaHaJe's summer camps so long as the child's parents or guardians agree that the child will follow the Camp's policies like all other campers and everyone agrees that attending camp will be a positive experience for the child.

---

[1] https://perma.cc/4Q6P-7C4L (emphasis removed).

**C.    Colorado's rules regulating licensed children's resident camps.**

61.    The Department licenses child care facilities, including children's resident camps. Child Care Licensing and Administration Webpage at 2, a true and accurate copy is attached as Exhibit 5.

62.    Organizations that meet Colorado's definition of "children's resident camp," such as IdRaHaJe, and that do not qualify for an exemption from licensing requirements must obtain a license before operating in Colorado. Colo. Revised Statutes § 26.5-5-309(1); General Rules for Child Care Facilities, Rule 2.105; *see also id.*, Rule 2.113(B) ("[W]hen an individual operates a facility after a license has been denied, suspended, revoked, or not renewed, or before an original license has been issued, injunctive proceedings may be initiated to enjoin the individual from operating a child care facility without a license.").

63.    "A permanent license is granted when the Department is satisfied that the facility or agency is in compliance with the appropriate Department rules and the Child Care Licensing Act. The permanent license remains in effect until surrendered or revoked." General Rules for Child Care Facilities, Rule 2.107.

64.    The Department rules applicable to children's resident camps are the General Rules for Child Care Facilities (Rule Section 2.100), Rules Regulating Children's Resident Camps (Rule Section 2.400), and Rules Regulating Special Activities (Rule Section 2.600) (collectively, "resident camp regulations"), which are all part of Colorado's Child Care Facility Licensing Rules and Regulations, 8 CCR

1402-1. General Rules for Child Care Facilities, Rule 2.103; Rules Regulating

Children's Resident Camps, Rule 2.403; Rules Regulating Special Activities, Rule

2.603.

65.    IdRaHaJe must comply with all such rules to continue to operate as a

children's resident camp in Colorado.

66.    "Once a permanent license has been issued [to a children's resident

camp], the licensee must annually submit to the Department a declaration of

compliance with the applicable licensing rules and notice of continuing operation on

the form prescribed by the Department, along with the appropriate annual fee,"

General Rules for Child Care Facilities, Rule 2.107(B), "at least sixty (60) calendar

days prior to the anniversary date of the license," *id.*, Rule 2.111(B). "Failure to

submit the annual Continuation Notice and fee will constitute a consistent failure

to maintain Department standards and may result in fines or the revocation of the

license." *Id.*, Rule 2.107(C).

67.    Each year, the Department inspects each licensed organization's

facilities and operations to ensure compliance with state requirements.

68.    The Department may revoke, suspend, or make probationary a

children's resident camp's license for failure to comply with applicable regulations.

Colo. Revised Statutes § 26.5-5-317(2)(f); General Rules for Child Care Facilities,

Rule 2.107. The Department may also assess fines against a licensee "who willfully

and deliberately or consistently violates" applicable regulations. Colo. Revised

Statutes § 26.5-5-317(7); *id.* § 26.5-5-323(1); General Rules for Child Care Facilities, Rule 2.113(A). Third parties can also submit complaints of suspected licensing violations. General Rules for Child Care Facilities, Rule 2.125; Colo. Revised Statutes § 26.5-5-318(2). And if a resident camp operates after a license has been denied, suspended, revoked, or not renewed, or before an original license has been issued, "injunctive proceedings may be initiated to enjoin the [camp] from operating a child care facility without a license." General Rules for Child Care Facilities, Rule 2.113(B); Colo. Revised Statutes § 26.5-5-320.

69.    IdRaHaJe meets all children's resident camp regulations, except the gender identity regulations outlined below. It has never had its license revoked or suspended or faced a fine for violating resident camp regulations.

**D.    Colorado amends the rules regulating licensed children's resident camps.**

70.    Last year, the Department adopted new resident camp regulations that require children's camps to allow campers to use bathing, dressing, and sleeping facilities designated for the opposite sex.

71.    The new regulations require resident camps to allow campers "the use of gender-segregated showers that are consistent with their gender identity with showers or bathtubs separated by partitions to provide privacy or private showering or bathtub facilities." Rules Regulating Children's Resident Camps, Rule 4.23(D)(2); *see also* Proposed Rules Redline at 28, a true and accurate copy is attached as Exhibit 6.

13

72.     The new regulations also require that resident camps allow campers to "sleep in the same room or tent with individuals whose gender identity is consistent with their gender identity." Rules Regulating Children's Resident Camps, Rule 2.425(I); *see also* Exh. 6 (Proposed Rules Redline) at 31.

73.     And "[i]n gender-segregated facilities where undressing in the presence of others occurs, resident camps shall make reasonable accommodations to allow access to areas for undressing consistent with an individual's gender identity." Rules Regulating Children's Resident Camps, Rule 2.425(J); *see also* Exh. 6 (Proposed Rules Redline) at 31.

74.     The regulations also require that resident camp campers "be allowed the use of gender-segregated toilet facilities that are consistent with their gender identity with toilets separated by partitions to provide privacy or private toilet facilities." Rules Regulating Children's Resident Camps, Rule 2.423(B).

75.     Finally, the new regulations require children's resident camps that offer backpacking or camping trips to allow children to "sleep in the same room or tent with individuals that are consistent with their gender identity" and "[i]n gender-segregated facilities where undressing in the presence of others occurs, ... make reasonable accommodations to allow access consistent with an individual's gender identity." Rules Regulating Special Activities, Rule 2.620(B)(4), (5); *see also* Exh. 6 (Proposed Rules Redline) at 69.

14

76.    The Department announced and adopted these gender identity amendments in 2024, and they became effective on February 14, 2025.[2]

77.    The Department has required camps to "immediately implement[]" the gender identity amendments. Provider Consultation for Rules Regulating Children's Resident Camp Programs at 1, a true and accurate copy is attached as Exhibit 7.

78.    The amended resident camp regulations prohibit IdRaHaJe from aligning its internal policies and operations with its religious beliefs about sexuality and gender.

79.    Yet the regulations allow for individualized exemptions for "[a]ny applicant or licensee" from "any rule or standard" that would pose "an undue hardship" on the applicant or licensee. General Rules for Child Care Facilities, Rule 2.115(A).

80.    Indeed, since 2017, the Department has exempted IdRaHaJe from the requirement that playground equipment not exceed six feet. True and accurate copies of the communications granting this exemption are attached as Exhibit 8.

81.    On information and belief, other camps have also received exemptions from certain regulations.

82.    Colorado also exempts from licensing requirements certain types of child care facilities. For example, "[a] license is not required for ... [a] special school or class in religious instruction"; "[a] special school or class operated for a single

---

[2] https://perma.cc/TFK7-N6VS.

skill-building purpose"; "[a] child care center operated in connection with a church, shopping center, or business where children are cared for during short periods of time"; "[o]ccasional care of children with or without compensation, which means the offering of child care infrequently and irregularly that has no apparent pattern"; and "[a] family care home that provides less than 24-hour care." General Rules for Child Care Facilities, Rule 2.112(B).

83.    On information and belief, organizations have received exemptions from all childcare licensing requirements.

84.    As explained in more detail below, IdRaHaJe has requested a religious exemption from the resident camp regulations that require camps to allow campers to use shower, dressing, and sleeping facilities based on chosen gender identity. The Department denied the request. The Camp also asked about receiving a categorical exemption from licensing requirements for "[a] special school or class in religious instruction." The Department told the Camp that that exemption would not apply to IdRaHaJe.

85.    So other child care facilities, including camps, have been exempted from some or all resident camp regulations, but the Department refused to give IdRaHaJe an exemption.

**E.    IdRaHaJe objects to Colorado's amendments.**

86.    In August 2024, IdRaHaJe submitted written comments to the proposed amendments to the resident camp regulations that would require camps to

16

allow campers to use shower, dressing, and sleeping facilities based on chosen gender identity. The Camp explained that a religious exemption should be included so that religious camps are not required to violate their religious beliefs to maintain a license. The Department refused to include the requested exemption. True and accurate copies of the comments and responses are attached as Exhibit 9.

87.    IdRaHaJe's Director also attended hearings regarding the proposed amendments. At the February 29, 2024 hearing, he asked if there would be a religious exemption for the amendments and was told that the amendments were based on a statute and he thus needed to seek legal advice.

**F.    IdRaHaJe faces irreparable harm.**

88.    IdRaHaJe currently is, and intends to continue, operating its programs according to its religious beliefs, including by separating restrooms, shower facilities, and dressing and sleeping areas based on biological sex.

89.    But Colorado's resident camp regulations prohibit the Camp from continuing to operate according to its religious beliefs by forcing it to treat campers based on their "gender identity," rather than sex, and thus allow campers to use restroom, shower, dressing, and sleeping facilities designated for the opposite sex. The regulations would also force the Camp to allow campers to share a room or tent with members of the opposite sex on its off-site backpacking and camping trips.

90.    By continuing to separate its restroom, shower, dressing, and sleeping facilities based on biological sex, the Camp violates Colorado's resident camp

17

regulations, and its license will be revoked or suspended and it could face fines or a third-party complaint.

91.    IdRaHaJe's 2025 summer camps will begin on June 8. At that time, IdRaHaJe will not be operating its camps in compliance with the amended regulations.

92.    Also, in June, to renew its license, the Camp will have to certify that it is in compliance with all resident camp regulations. But the Camp cannot certify compliance with the resident camp regulations that require camps to allow children to use restroom, shower, sleeping, and dressing facilities based on their chosen gender identity ("gender identity regulations").

93.    And the Camp has and will continue to have prospective and actual campers that struggle with gender dysphoria.

94.    For example, in the summer of 2021, a mother whose child had registered for an IdRaHaJe camp informed IdRaHaJe before her child's camp began that her child was identifying as the opposite sex and asked for the Camp's policy for such campers. The Camp told her that the child was welcome to attend the camp, but the child needed to dress and use bathroom and sleeping facilities according to the child's biological sex. The parents and child agreed with such policies, but the child's camp was ultimately canceled due to the COVID-19 pandemic.

95.    The gender identity regulations violate the Camp's religious beliefs and exercise, forcing it to alter its very character and purpose to maintain a license to operate as a children's resident camp.

96.    The Camp satisfies all conditions for operating as a licensed children's resident camp, other than the gender identity regulations.

97.    The Camp has requested a religious exemption from the gender identity regulations, but the Department denied the request.

98.    Because the Camp will not forfeit its religious beliefs and practices and comply with the gender identity regulations, it will face revocation or suspension of its license and fines.

99.    So IdRaHaJe is left with a choice: Option A: it can forgo its religiously based policies and practices and operate as a children's resident camp in Colorado, or Option B: it can retain its religiously based policies and practices and lose its license to operate.

100.    The Department forces the Camp to decide between exercising its constitutionally protected rights and maintaining a license to operate as a children's camp like everyone else, causing it irreparable harm.

101.    If IdRaHaJe loses its license, the Camp can no longer operate its summer camps and minister to children who desire to attend IdRaHaJe's faith-based summer camps.

102.   Monetary damages are an inadequate remedy because they would fail to alleviate the constitutional harm of depriving IdRaHaJe the opportunity to operate as a children's resident camp and minister to the children that would attend its camps and depriving children of the opportunity to participate in IdRaHaJe's camps due to their religious beliefs and exercise.

103.   Accordingly, the Camp needs judicial relief declaring that it is unconstitutional for the Department to require the Camp to comply with the gender identity regulations.

104.   The Camp also needs injunctive relief prohibiting the Department from denying a license to or otherwise penalizing the Camp for its inability to comply with the gender identity regulations.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Violation of the First Amendment—Free Exercise Clause
### Exclusion from Otherwise Available Government Benefits
### (42 U.S.C. § 1983)

105.   IdRaHaJe incorporates by reference paragraphs 1–104.

106.   The Department cannot disqualify otherwise qualified resident camps from licensing "solely because of their religious character," *Trinity Lutheran*, 582 U.S. at 462, nor "on the basis of their religious exercise," *Carson v. Makin*, 596 U.S. 767, 789 (2022).

107.   This is true "[r]egardless of how the benefit and restriction are described." *Carson*, 596 U.S. at 789.

20

108.    Yet through the gender identity regulations, the Department prevents IdRaHaJe from maintaining an otherwise available license to operate solely because of the Camp's religious character and exercise.

109.    IdRaHaJe's religious beliefs and exercise prevent it from complying with the gender identity regulations.

110.    The Department requires IdRaHaJe to abandon its religious beliefs and exercise to maintain an otherwise available license to operate as a children's resident camp in Colorado.

111.    Requiring IdRaHaJe to forfeit its religious status, beliefs, and exercise to maintain an otherwise available license to operate as a children's resident camp in Colorado triggers strict scrutiny under the Free Exercise Clause.

112.    The gender identity regulations—and the Department's decision to enforce them against IdRaHaJe—do not serve a compelling governmental interest and are not narrowly tailored to achieve any purported compelling interest, and therefore violate the Free Exercise Clause of the First Amendment.

113.    What's more, the Department engaged in impermissible religious hostility by refusing to grant a religious exemption to IdRaHaJe while granting exemptions from regulations for secular reasons and despite clear precedent that prohibits the State from excluding IdRaHaJe from licensing based on its religious character and exercise. Such religious hostility is unconstitutional per se. *See Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 584 U.S. 617 (2018).

21

## SECOND CLAIM FOR RELIEF
### Violation of the First Amendment—Free Exercise Clause
### Not Neutral and Generally Applicable
### (42 U.S.C. § 1983)

114.    IdRaHaJe incorporates by reference paragraphs 1–104.

115.    IdRaHaJe's sincerely held religious beliefs guide and permeate everything that it does.

116.    IdRaHaJe exercises its sincerely held religious beliefs through the operation of its programs and facilities, including by separating restroom, shower, sleeping, and dressing facilities based on biological sex.

117.    Requiring IdRaHaJe to give up its religious practice of separating restroom, shower, sleeping, and dressing facilities based on biological sex to maintain an otherwise available license to operate substantially burdens IdRaHaJe's religious exercise.

118.    The gender identity regulations are not neutral or generally applicable because the Department has discretion to create individualized and categorical exceptions, which it has done for certain organizations.

119.    The gender identity regulations are not neutral or generally applicable because there is a mechanism for individualized exemptions: the Department has authority to grant exemptions from specific regulations based on hardship, General Rules for Child Care Facilities, Rule 2.115(A), and to grant exemptions from all licensing requirements for certain types of child care facilities, *id.*, Rule 2.112(B).

120.    The Department's enforcement of the gender identity regulations is not neutral or generally applicable because the Department has denied requests for religious exemptions while giving them for other reasons.

121.    The gender identity regulations also are not neutral and generally applicable because the practical "effect" of those provisions is to exclude only those organizations with religious beliefs and practices like IdRaHaJe's. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 535 (1993) (the "effect" of the challenged law "in its real operation is strong evidence of its object").

122.    Because the gender identity regulations—and the Department's decision to enforce them against IdRaHaJe—are not neutral or generally applicable, they trigger strict scrutiny under the Free Exercise Clause.

123.    The gender identity regulations—and the Department's decision to enforce them against IdRaHaJe—do not serve a compelling governmental interest and are not narrowly tailored to achieve any purported compelling interest, and therefore violate the Free Exercise Clause of the First Amendment.

### THIRD CLAIM FOR RELIEF
### Violation of the First Amendment—Religion Clauses
### Religious Autonomy
### (42 U.S.C. § 1983)

124.    IdRaHaJe incorporates by reference paragraphs 1–104.

125.    IdRaHaJe is a religious organization.

126.    Both Religion Clauses of the First Amendment protect IdRaHaJe's "power to decide for [itself], free from state interference, matters of [internal]

23

government as well as those of faith and doctrine." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952).

127.    This right to religious autonomy protects IdRaHaJe's internal decisions about how to operate its programs consistent with its beliefs, including its decisions on its policies that require the use of restroom, dressing, sleeping, and shower facilities based on biological sex.

128.    The gender identity regulations prevent IdRaHaJe from operating its programs consistent with its religious beliefs by preventing IdRaHaJe from maintaining internal policies and operations that require the use of restroom, dressing, sleeping, and shower facilities based on biological sex.

129.    The gender identity regulations thus violate the religious autonomy doctrine by prohibiting IdRaHaJe from choosing to operate its programs consistent with its religious beliefs, including its beliefs on sexuality and gender.

130.    Requiring IdRaHaJe to forfeit its religious autonomy to maintain a license to operate as a children's resident camp violates both the First Amendment's Religion Clauses.

### FOURTH CLAIM FOR RELIEF
### Violation of the Fourteenth Amendment—Equal Protection Clause
### (42 U.S.C. § 1983)

131.    IdRaHaJe incorporates by reference paragraphs 1–104.

132.    The Equal Protection Clause prohibits discrimination based on fundamental rights or protected classes, including religion.

133.    The Equal Protection Clause prohibits the Department from excluding IdRaHaJe from licensing because of its religious status, character, beliefs, and exercise.

134.    By enforcing the gender identity regulations against IdRaHaJe, the Department asks IdRaHaJe to surrender its religious status, character, beliefs, and exercise to maintain a license to operate in Colorado.

135.    The Department treats IdRaHaJe less favorably than similarly situated organizations because of its religious status, character, beliefs, and exercise.

136.    Enforcement of the gender identity regulations against IdRaHaJe must satisfy strict scrutiny because the disparate treatment is based on IdRaHaJe's fundamental right to religious exercise.

137.    Because the Department's disparate treatment of IdRaHaJe infringes on IdRaHaJe's fundamental right to religious exercise, discriminatory intent is presumed.

138.    The gender identity regulations—and the Department's decision to enforce them against IdRaHaJe—do not serve a compelling governmental interest and are not narrowly tailored to achieve any purported compelling interest, and therefore violate the Equal Protection Clause of the Fourteenth Amendment.

## PRAYER FOR RELIEF

WHEREFORE, Camp Id-Ra-Ha-Je Association requests that this Court enter judgment against Defendants, and order the following relief:

A. Enter a declaratory judgment, declaring that enforcement of the gender identity regulations against IdRaHaJe as a condition to maintaining a license to operate in Colorado violates the Free Exercise, Establishment, and Equal Protection Clauses.

B. Enter a preliminary and permanent injunction: (1) enjoining the Department from requiring IdRaHaJe to abide by the gender identity regulations to maintain a license to operate in Colorado and (2) enjoining the Department from prohibiting IdRaHaJe from maintaining a license to operate in Colorado because of its religious status, character, beliefs, or exercise.

C. Costs and attorneys' fees.

D. Grant any other relief this Court deems equitable, just, and proper.

E. Retain jurisdiction of this matter as necessary for enforcing this Court's orders.

Respectfully submitted this 12th day of May 2025,

David Cortman
AZ Bar No. 029490
Ryan Tucker
AZ Bar No. 034382
Jeremiah Galus
AZ Bar No. 030469
ALLIANCE DEFENDING FREEDOM
5100 N. 90th Street
Scottsdale, AZ 85260
Telephone: (480) 444-0020
Email: dcortman@ADFlegal.org
          rtucker@ADFlegal.org
          jgalus@ADFlegal.org

s/ *Andrea Dill*
Andrea Dill
DC Bar No. 1719500
ALLIANCE DEFENDING FREEDOM
440 1st Street NW
Washington DC 20001
Telephone: (202) 393-8690
Email: adill@adflegal.org

*Counsel for Plaintiff*

## DECLARATION UNDER PENALTY OF PERJURY

I, Mike DeBoer, a citizen of the United States and a resident of Colorado, declare under penalty of perjury under 28 U.S.C. § 1746 that the foregoing Verified Complaint and the factual allegations contained therein are true and correct to the best of my knowledge.

Executed on May 9, 2025, in Bailey, Colorado.

s/ Mike DeBoer
Mike DeBoer
Executive Director
IdRaHaJe